**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MICHAEL C. YANCEY,

                            Plaintiff,                    9:17-CV-0381
                                                            (BKS/CFH)

        v.

DOUGLAS ROBERTSON,

                          Defendant.

_____

**APPEARANCES:**                            **OF COUNSEL:**

Michael C. Yancey
16-A-4993
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403
Plaintiff pro se

Daniel C. Lynch                            MICHAEL L. GOLDSTEIN, ESQ.
Albany County Attorney                 Assistant County Attorney
112 State Street, 6th Floor
Albany, New York 12207
Attorney for defendant

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff pro se Michael C. Yancey ("plaintiff"), who was, at all relevant times, a

pretrial detainee in the custody of the Albany County Correctional Facility ("ACCF")

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

brings this action pursuant to 42 U.S.C. § 1983.  Dkt. No. 1 ("Compl.").  Plaintiff alleges

that defendant Douglas Robertson ("defendant"), who was, at all relevant times,

employed as a Corrections Officer at ACCF, violated plaintiff's constitutional rights

under the Fourteenth Amendment.  Id.  Presently pending before the Court is

defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure ("Fed. R. Civ. P.").  Dkt. No. 44.  Plaintiff opposed defendant's motion.

Dkt. Nos. 46, 48, 50, 51.  Defendant filed a reply.  Dkt. No. 52.  For the following

reasons, it is recommended that defendant's motion be granted.


## I.    Background[2]

The record herein contains few undisputed facts.  In support of defendant's

Motion for Summary Judgment, defendant filed a Statement of Material Facts[3] pursuant

---

[2] Unless otherwise indicated, page citations refer to the pagination generated by this Court's electronic filing system, located at the header of each page, not to the pagination of the individual documents.

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

to Local Rule 7.1, citing to plaintiff's medical documentation and sworn testimony.  See generally Dkt. No. 44.  Plaintiff filed supplemental responses to defendant's motion, see Dkt. Nos. 46, 48, 50, 51, admitting to and denying certain of defendant's statements in corresponding paragraphs.  See Dkt. No. 46 ¶¶ 7, 14, 15, 16, 17, 28-31.  However, plaintiff's denials failed to "set forth a specific citation to the record where the factual issue arises," as required by Local Rule 7.1(a)(3).  N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.").  "Generally, the 'plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'"  Jessamy v. City of New Rochelle, N.Y., 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); see also Houston v. Goord, No. 03-CV-1412 (GTS/DEP), 2009 WL 890658, at *3 (N.D.N.Y. Mar. 31, 2009) ("[W]here a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute — even if that nonmoving party is proceeding pro se. . . . [E]ven pro se litigants must obey a district court's procedural rules.").

3

Plaintiff demonstrated knowledge of Local Rule 7.1's requirements insofar as he filed a supplemental response to defendant's Statement of Material Facts which mirrored defendant's statement in matching numbered paragraphs.  See N.D.N.Y. L.R. 7.1(a)(3); Dkt. No. 46.  However, he failed to set forth specific citations to the record to support his denials.  Id.  Additionally, although plaintiff alleges additional facts in his supplemental responses, he fails to support those allegations with medical documentation or sworn testimony in the record.  See Dkt. No. 51.

Defendant filed a Reply Memorandum in Support of Defendant's Motion for Summary Judgment arguing that, as plaintiff failed to provide specific cites to the record to establish a genuine dispute of material facts, defendant is entitled to summary judgment and dismissal of plaintiff's Complaint.  Dkt. No. 52 at 5.  Defendant contends that pro se plaintiffs are not exempt from the requirements of Local Rule 7.1(a)(3) and that plaintiff failed to properly respond to defendant's Motion for Summary Judgment insofar as he did not comply with Local Rule 7.1(a)(3).  Id.  Keeping in mind the special solicitude afforded to a pro se plaintiff, the Court declines to dismiss the Complaint solely due to plaintiff's failure to fully comply with Local Rule 7.1, especially as plaintiff's responses did attempt some measure of compliance.  See Dkt. 46.  Instead, to the extent that defendant's statement of facts is supported by the record, and not otherwise controverted by plaintiff, the Court will deem defendant's facts admitted by plaintiff.  See Sledge v. Kooi, 564 F.3d 105, 107 n.2 (2d Cir. 2009) (per curiam) (requiring the plaintiff, "when opposing a motion for summary judgment, to rely not 'upon the mere allegations' of his Complaint, but rather to 'set forth specific facts showing that there is a genuine issue of material fact' through affidavits and reference to discovery, [by] respond[ing] to

4

each of the assertions in [the] statement of material facts with specific reference to the

record and 'any facts set forth [therein] shall be deemed admitted unless specifically

controverted'" by the plaintiff); <u>see also</u> <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 194 (2d

Cir. 2014) ("The non-moving party need not respond to the motion.  However, a non-

response runs the risk of unresponded-to statements of undisputed facts proffered by

the movant being deemed admitted.") (citing FED. R. CIV. P. 56(e)(2)).


### A.  Plaintiff's Recitation of the Facts

The facts set forth in this section, which are based upon plaintiff's allegations

contained in his submissions, are considered in the light most favorable to plaintiff as

the nonmoving party.  <u>See</u> Compl., Dkt. Nos. 46, 48, 50, 51.  Plaintiff alleges that, on or

about April 13, 2016, he was given the incorrect medication by the medical staff at

ACCF, which caused him "to break out in an intense and painful heat rash and hives" on

his face, neck, arms, and torso, "with redness and discoloration."  Compl. ¶ 6.  Plaintiff

felt his condition worsening that evening, "with difficulty breathing, feeling my throat

closing, and respiratory distress."  <u>Id.</u>  At approximately 2:00 A.M. on April 14, 2016,

plaintiff called out to defendant "at least twice, requesting medical aid."  <u>Id.</u>  Plaintiff

stated to defendant, "I can't breathe.  Can you please send me down to medical I have

a [sic] outbreak, with puss [sic] and blood coming out."  Dkt. No. 46 ¶ 10.[4]  Defendant

responded, "the Sargeant [sic] don't deal with your kind of shit, and, I will write a note for

---

[4] The Court must read a <u>pro se</u> plaintiff's papers "liberally and interpret them to raise the strongest arguments that they suggest."  <u>Brownell v. Krom</u>, 446 F.3d 305, 310 (2d Cir. 2006) (quoting <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 50 (2d Cir. 2003)).  Thus, although plaintiff alleged these additional facts in supplemental submissions to the Court, rather than his Complaint, they are included in Plaintiff's Recitation of the Facts.

him . . . ."  Dkt. No. 50 at 2.  Later that morning, plaintiff was taken to the medical

department.  Compl. ¶ 6.  The medical staff determined that he had been given sulfur,

despite his sulfur allergy.  Id.


### B.  Defendant's Recitation of the Facts

Plaintiff was committed to ACCF on February 5, 2016.  Dkt. No. 44-3 ¶ 1 (citing

Dkt. No. 44-4 at 6:19, 12:2, 84:18).[5]  On February 9, 2016, plaintiff submitted a Sick Call

Request, explaining that he had eczema on his body and face and requesting skin

ointment.  Id. ¶ 4 (citing Dkt. No. 44-11).  On March 28, 2016, a treating physician in the

medical department placed plaintiff on a daily multivitamin regimen.  Id. ¶ 5 (citing Dkt.

No. 44-4 at 46:23; Dkt. No. 44-10 at 6; Dkt. No. 44-9 at 29:2).  From March 28, 2016

until April 14, 2016, a nurse saw plaintiff on a daily basis when she dispensed his

medications at his cell.  Id. ¶ 7 (citing Dkt. No. 44-9 at 33:24-25, 34:1-6).  Plaintiff began

experiencing a rash and/or hives approximately one week after beginning the

multivitamin regimen.  Id. ¶ 8 (citing Dkt. No. 44-9 at 27:20; Dkt. No. 44-4 at 36:12,

37:24).

On April 14, 2016, at approximately 2:00 A.M., plaintiff told defendant, "I can't

breathe.  Can you please send me down to medical.  I've been having this issue with

this outbreak.  I have pus and blood coming out.  I can't breathe.  Can you please help

me."  Dkt. No. 44-3 ¶¶ 9-10 (citing Dkt. No. 44-9 at 41:5-10, 42:17-21).  Plaintiff was not

vomiting or convulsing, and never lost consciousness during their interaction or

thereafter.  Id. ¶¶ 11-13 (citing Dkt. No. 44-9 at 52:20, 23; 53:2, 4).  In response to

---

[5] The Court's citation to the exhibits referenced in defendant's statement of material facts is to the documents' original pagination.

plaintiff's request, defendant told plaintiff, "I'll write a note to the Sergeant."  Id. ¶ 14

(citing Dkt. No. 44-9 at 42:25).  There was no further contact between plaintiff and

defendant, and the medical department saw plaintiff the following morning.  Id. ¶¶ 15-16

(citing Dkt. No. 44-9 at 53:12; Dkt. No. 44-10 at 6; Dkt. No. 44-12).  According to

medical staff notations from April 14, 2016, plaintiff complained of a rash on his arms

that had been occurring over the past few days and worsening every day.  Id. ¶ 17

(citing Dkt. No. 44-10 at 6).

While examining plaintiff on April 14, 2016, medical staff noted hives on plaintiff's

forearms and neck and observed that he was in no apparent respiratory distress.  Dkt.

No. 44-3 ¶ 18 (citing Dkt. No. 44-10 at 6).  Plaintiff was prescribed 25 mg. of Benadryl

and was discontinued on the multivitamin regimen.  Id. ¶ 19 (citing Dkt. No. 44-10 at 6).

On April 15, 2016 at 5:00 P.M., plaintiff filled out a Sick Call Request, stating, "I have a

very bad rash on my arms, face and legs red hot and swolling [sic]."  Id. ¶ 20 (citing

Dkt. No. 44-13).  Plaintiff was seen on April 16, 2016 at 10:00 A.M., at which time

medical staff noted hives on plaintiff's arms and neck and that he was not experiencing

respiratory distress.  Id. ¶ 22 (citing Dkt. No. 44-10 at 6).  Medical staff prescribed

plaintiff 50 mg. of Benadryl.  Id. ¶ 23 (citing Dkt. No. 44-10 at 6).

At approximately 2:00 P.M. on April 16, 2016, medical staff noted no

improvement to the rash and that plaintiff was not experiencing respiratory distress.

Dkt. No. 44-3 ¶¶ 24-25 (citing Dkt. No. 44-10 at 6).  Plaintiff was then admitted to the

medical infirmary for observation and was prescribed 40 mg. of Prednisone.  Id. ¶ 26

(citing Dkt. No. 44-10 at 6-7).  Plaintiff remained in the infirmary for three days.  Id. ¶ 27

(citing Dkt. No. 44-10 at 6-7).  Plaintiff was returned to his cell on April 18, 2016 after

experiencing a reduction in skin symptoms and no complaints of pain or discomfort.  Id. ¶¶ 28-29 (citing Dkt. No. 44-10 at 6-7; Dkt. No. 44-9 at 65:11, 12, 16).

## II.    Discussion[6]

Plaintiff contends that defendant was deliberately indifferent to his serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment. See generally Compl.  Defendant argues that plaintiff cannot establish a deliberate indifference claim because the factual record establishes that plaintiff's medical condition and the alleged delay in treatment of that condition were not sufficiently serious to assert a constitutional violation.  See Dkt. No. 44-2 ("Def. Mem. of Law") at 4. In the alternative, defendant argues that he is shielded by qualified immunity.  See id. at 14.

## A.  Legal Standards

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a

---

[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). "In determining whether summary judgment is appropriate, [the Court will]

resolve all ambiguities and draw all reasonable inferences against the moving party."

Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

    To avoid summary judgment, a non-moving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Carey v.

Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A

non-moving party must support such assertions by evidence showing the existence of a

genuine issue of material fact. Id. "When no rational jury could find in favor of the non-

moving party because the evidence to support its case is so slight, there is no genuine

issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential

Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

    Where a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006). The Second Circuit has stated that,

> [t]here are many cases in which we have said that a pro se litigant
> is entitled to "special solicitude," . . . that a pro se litigant's
> submissions must be construed "liberally," . . . and that such
> submissions must be read to raise the strongest arguments that
> they "suggest," . . . . At the same time, our cases have also indicated
> that we cannot read into pro se submissions claims that are not
> "consistent" with the pro se litigant's allegations, . . . or arguments
> that the submissions themselves do not "suggest," . . .  that we
> should not "excuse frivolous or vexatious filings by pro se litigants,"
> . . . and that pro se status "does not exempt a party from compliance
> with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Fourteenth Amendment

Pretrial detainees' deliberate indifference claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, as "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner . . . .'" Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007) (quotation marks omitted).[7] "[D]eliberate indifference to serious medical needs . . . constitutes the 'unnecessary and wanton infliction of pain,' . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citation omitted).  To establish a claim for deliberate indifference to a pretrial detainee's serious medical needs,[8] the detainee must satisfy a two-pronged test.  See Darnell, 849 F.3d at 29.  The first prong,

---

[7] In Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009), the Second Circuit held that "claims for deliberate indifference to a serious medical condition or other serious threat to the health and safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  However, Caiozzo was overruled by Darnell, where the court posited that "there is no basis for the reasoning in Caiozzo that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment . . . must apply to deliberate indifference claims under the Fourteenth Amendment.  Caiozzo is thus overruled to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment."  Darnell, 849 F.3d at 35.

[8] "Unlike a violation of the Cruel and Unusual Punishments Clause, an official can violate the Due Process Clause . . . without meting out any punishment . . . . [T]o establish a claim for deliberate indifference . . . under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  Darnell, 849 F.3d at 35.

the objective prong, considers whether "the alleged deprivation of adequate medical care [was] 'sufficiently serious.'" Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)) (quotation marks omitted).[9] "Under the first inquiry, adequate medical care is 'reasonable care' such that 'prison officials who act reasonably cannot be found liable.'" Martinez v. Aycock-West, 164 F. Supp. 3d 502, 511 (S.D.N.Y. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 845 (1994)). The second prong, commonly referred to as the subjective prong, considers whether the charged officials "acted with at least deliberate indifference" to the plaintiff's medical needs. Darnell, 849 F.3d at 29. "[T]he Due Process Clause can be violated when an official does not have the subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm". Id. at 35. "The reason that the term 'subjective prong' might be a misleading description is that . . . the Supreme Court has instructed that 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively . . . or objectively. . . ." Id. at 29 (specifying that the "subjective prong" would be "better classified" as a "*mens rea* prong" or "mental element prong"). Thus, a detainee must prove that an official acted intentionally or recklessly to satisfy the subjective prong; negligently-inflicted harm does not suffice. See id. at 36.

---

[9] The Supreme Court of the United States, in Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466 (2015), "altered the standard for deliberate indifference claims under the Due Process Clause." Darnell, 849 F.3d at 30. However, the objective prong remains the same, whether analyzed under the Eighth or Fourteenth Amendments. Figueroa v. Cty. of Rockland, No. 16-CV-6519 (NSR), 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018).

**1.  First Prong: Objective Component**

Deprivation of medical treatment is "sufficiently serious" if the injury or illness is one where there is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (internal citation omitted).  This first prong requires two inquiries.  See Salahuddin, 467 F.3d at 279.  The first inquiry is whether the detainee was actually deprived of adequate medical care. See id. ("As the Supreme Court has noted, the prison official's duty is only to provide reasonable care."); see also Farmer, 511 U.S. at 847 (holding that a prison official may be liable "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").  "Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment[10] when the care provided is 'reasonable.'"  Jones v. Westchester Cty. Dep't of Corrs., 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (citing Salahuddin, 467 F.3d at 280).  "Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable . . . , and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability."  Salahuddin, 467 F.3d at 279-80 (internal citation and quotation marks omitted).  Second, the Court must determine whether the inadequacy in medical care — or a delay in, or failure to render, medical attention — is sufficiently serious.  See Allen v. Ford, 880 F. Supp. 2d 407, 409 (W.D.N.Y. 2012) (citing Verley v.

---

[10] The objective component of the deliberate indifference claim is identical, whether under the Eighth or Fourteenth Amendments.  See Figueroa, 2018 WL 3315735, at *4 ("The objective prong under either Amendment remains the same, . . . mandating that the deprivation be, "in objective terms, sufficiently serious[.]") (citing Darnell, 849 F.3d at 30; Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

Wright, No. 02-CV-1182 (PKC), 2007 WL 2822199 (S.D.N.Y. Sept. 27, 2007)).  This

requires the Court to examine whether the offending conduct is inadequate, and what

harm, if any, the inadequacy has caused or likely will cause the detainee.  See id. (citing

Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

Where a delay in medical treatment is alleged, "it is appropriate to focus on the

challenged *delay* or *interruption* in treatment rather than the [detainee's] *underlying*

*medical condition* alone in analyzing whether the alleged deprivation is, in 'objective

terms, sufficiently serious . . . .'"  Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)

(quoting Chance, 143 F.3d at 702); see also Salahuddin, 467 F.3d at 280.  A delay in

medical treatment must be interpreted in the "context of the seriousness of the medical

need,[11] deciding whether the delay worsened the medical condition, and considering

the reason for delay."  See id. at 186 (citing Chance, 143 F.3d at 702) ("[I]f prison

officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek

that is becoming infected, the failure to provide appropriate treatment might well violate

the Eighth Amendment.").  "A skin rash is generally insufficient to meet the objective

requirement of a sufficiently grave and serious condition giving rise to a deliberate

indifference claim."  Purdie v. City of N.Y., No. 11-CV-5802 (PKC), 2011 WL 1044133,

at *3 (S.D.N.Y. Mar. 15, 2011) (citing Sledge, 564 F.3d at 108) (holding that the

plaintiff's claims of skin, stomach, and back discomfort were insufficient to warrant

denial of summary judgment); see also Troy v. Kuhlmann, No. 96-CV-7190 (BSJ), 1999

WL 825622, at *13 (S.D.N.Y. Oct. 15, 1999) (dismissing at summary judgment the

---

[11] "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'"  Salahuddin, 467 F.3d at 280 (quoting Chance, 143 F.3d at 702).

plaintiff's deliberate indifference claim arising out of rashes for which he was supplied hydrocortisone cream).

The undersigned will first assess whether defendant deprived plaintiff of adequate medical care. See Salahuddin, 467 F.3d at 280. "[T]o state a [claim for deliberate indifference to a serious medical condition], Plaintiff must plausibly allege that '. . . objectively, the deprivation the [detainee] suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities . . . .'" Martinez, 164 F. Supp. 3d at 510 (citing Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)). Plaintiff alleges in his Complaint that, on or about April 13, 2016, he broke out "in an intense and painful heat rash and hives" on his face, neck, arms, and torso, "with redness and discoloration." Compl. ¶ 6. As his condition worsened, "with difficulty breathing, feeling my throat closing, and respiratory distress," plaintiff called out to defendant at least twice "requesting medical aid." Id. Plaintiff alleges that defendant replied, "[t]he Sergeant [sic] don't [sic] have time for your stuff!" Id. In his deposition and his supplemental responses, however, plaintiff stated that he said to defendant, "I can't breathe. Can you please send me down to medical. I've been having this issue with this outbreak. I have pus and blood coming out. I can't breathe. Can you please help me," further alleging that he could not see "because the infection had gotten to my eyes, my ears." Dkt. No. 44-9 at 43:17-21, 49:10-11; Dkt. No. 46 ¶ 10. In his deposition and supplemental responses, plaintiff contends that defendant "replied by stating, '[t]he Sergeant [sic] don't [sic] have time for your stuff!' and 'I will write a note for [the sergeant].'" Dkt. No. 44-9 at 43:17-25; Dkt. No. 50 at 2-3. Plaintiff admits that he was seen the following morning by the medical department. Compl. ¶ 6; Dkt. No. 44-12.

14

Medical records dated April 14, 2016 state, "[h]ives noted on forearms and neck.  No apparent respiratory distress."  Dkt. No. 44-10 at 7.

Plaintiff fails to provide evidence from which a fact-finder could reasonably conclude that defendant's conduct constituted an actual deprivation of adequate medical care.  See Sledge, 564 F.3d at 108; see also Allen, 880 F. Supp. 2d at 410. Plaintiff contends that he told defendant he could not breathe and was having "a [sic] outbreak with puss [sic] and blood coming out," further alleging that these conditions were visible to defendant.  Dkt. No. 46 ¶ 10; Dkt. No. 48 at 5.  However, plaintiff offers no evidence to support a conclusion that his symptoms at the time he requested defendant's assistance included respiratory distress, an infection of his eyes and ears, or any significant bleeding or presence of pus, as medical staff noted solely the presence of hives and no apparent respiratory distress when they treated him on April 14, 2016 at 6:15 P.M., eighteen hours after his verbal interaction with defendant.  Dkt. No. 44-10 at 7.  Further, plaintiff offers no proof that the alleged severity of his symptoms was visible to defendant because, although defendant states plaintiff told him, "I can't breathe. . . . I've been having this issue with this outbreak. . . . I have pus and blood coming out," Dkt. No. 44-9 at 43: 17-21, defendant also indicated that plaintiff was not experiencing severe symptoms as he did not see plaintiff convulse, lose consciousness, or vomit.  Dkt. No. 44-3 ¶¶ 10-13; Dkt. No. 44-9 at 45:11-22; 49:2-14. Plaintiff has only demonstrated that he was experiencing a skin rash, not generally a condition requiring immediate emergency medical attention.  See Purdie, 2011 WL 1044133, at *3.  Moreover, plaintiff admitted that defendant acknowledged his request for medical aid by stating, "[h]e told me that, . . . 'I'll write a note to the sergeant.'"  Dkt.

No. 44-9 at 43:21-23.  As a prison official's duty is only to provide reasonable care, plaintiff fails to demonstrate how defendant's acknowledgement of plaintiff's request for medical attention and subsequent writing of a note to the sergeant is conduct other than reasonable care or is a deprivation of adequate medical care.  See Farmer, 511 U.S. at 847; see also Salahuddin, 467 F.3d at 279.  As plaintiff provides no proof that his skin rash was a "sufficiently grave and serious condition" or proof that he was experiencing respiratory distress and that it was visible to defendant, there is nothing to indicate that defendant failed to provide reasonable care.  Id.; see also Purdie, 2011 WL 1044133, at *3.   Thus, it is clear from the record that defendant did not deprive plaintiff of adequate medical care.

The Court notes that plaintiff's medical intake form indicates a history of asthma. Dkt. No. 44-10 at 3.  To the extent that plaintiff includes these records as a suggestion that defendant knew, or should have known, he had asthma, and, thus, a history of breathing problems, plaintiff makes no reference in the record to his asthma as a possible cause of his alleged respiratory distress anywhere in his Complaint, response, or multiple supplemental filings.  Compl. ¶ 6; Dkt. No. 48 at 24; Dkt. No. 50-1 at 2.  "The mere fact that an inmate has an asthmatic condition does not necessarily mean that the inmate has a serious medical need, although an actual asthma attack, depending on the severity, may be a serious medical condition."  Scott v. DelSignore, No. 02-CV-0029F, 2005 WL 425473, at *9 (W.D.N.Y. Feb. 18, 2005) (citing Patterson v. Lilley, No. 02-CV-6056 (NRB), 2003 WL 21507345, at *3-4 (S.D.N.Y. June 30, 2003)) (denial of asthma medication to asthmatic who alleged no discomfort or symptoms of an emergent attack does not satisfy objective component of deliberate indifference claim.).  Plaintiff

16

provides no proof that his alleged respiratory distress on April 13-14, 2016 stemmed from asthma or that at any time he requested from defendant breathing medication for asthma.  See Compl. ¶ 6; Dkt. No. 50 at 2-4.  Further, there is no evidence that plaintiff complained of an asthmatic attack or other breathing problems to medical staff.  See Compl. ¶ 6; Dkt. No. 44-10 at 7.  The medical staff notations from the April 14, 2016 examination state that plaintiff "complains of rash on arms, onset this AM . . . has been occurring over the last few days and worsening every day . . . ."  Dkt. No. 44-10 at 7.  Thus, plaintiff's inclusion of medical records documenting his history of asthma does not suffice to suggest that asthma was the cause of his alleged respiratory distress on April 13-14, 2016.  See Dkt. No. 50-1 at 2, 13.

Even if plaintiff had demonstrated a denial of adequate medical care, plaintiff has failed to show that the denial was "sufficiently serious" by demonstrating "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Salahuddin, 467 F.3d at 280.  Plaintiff offers no proof that he suffered serious harm from defendant's failure to assist him in obtaining immediate medical care.  See Allen, 880 F. Supp. 2d at 410-11 ("An inmate's mere disagreement over the proper treatment for his injuries does not create a constitutional claim.").  Plaintiff was seen by medical personnel at approximately 6:00 P.M. on April 14, 2016.  Dkt. No. 44-9 at 46:1-6; Dkt. No. 44-12; Dkt. No. 44-10 at 7.  Medical staff notes from that examination state, "[h]ives noted on forearms and neck.  No apparent respiratory distress."  Dkt. No. 44-10 at 7.  Plaintiff has produced no evidence to demonstrate that he suffered a sufficiently serious harm from not obtaining immediate medical attention or that he faced serious harm from the eighteen-hour delay in medical attention.  See

17

Smith, 316 F.3d at 187 (explaining that a serious medical need "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"); see also Allen, 880 F. Supp. 2d at 410 (holding that, where the plaintiff alerted the defendant prison official that he had suffered a burn, and was seen by the medical department the following morning, there was no evidence that the defendant acted with deliberate indifference as there was nothing to establish that the defendant knew of, and disregarded the severity of, the plaintiff's injuries).  Thus, defendant's conduct in relation to plaintiff's medical condition does not constitute a "sufficiently serious" inadequacy in medical care.  Salahuddin, 467 F.3d at 280.[12]

Reading plaintiff's Complaint liberally, insofar as plaintiff may be arguing that the eighteen-hour delay between when he contacted defendant and when he was seen by medical personnel amounts to a sufficiently serious inadequacy, he fails to provide any evidence demonstrating that the delay was "sufficiently serious."  Allen, 880 F. Supp. 2d at 409 (quoting Verley, 2007 WL 2822199, at *10).  Plaintiff admits that his skin rash was a condition for which he was receiving ongoing medical treatment and suggests that defendant was aware of the condition, as he informed defendant during their interaction on April 14, 2016.  Dkt. No. 44-10 at 6-9; Dkt. No. 48 at 5; Dkt. No. 50 at 2-3.  The medical entries for April 14, 2016 reflect that plaintiff was treated for the skin rash and that plaintiff was in no apparent respiratory distress.  Dkt. No. 44-10 at 7.  Plaintiff offers no proof that defendant knew of and disregarded the severity of plaintiff's rash when defendant acknowledged his request for medical attention and subsequently left a

---

[12] The undersigned also notes that there is no evidence that defendant was responsible for the eighteen-hour delay or that he had control over how long it took for plaintiff to be taken to the medical department.

note for the sergeant or that his symptoms became more severe between plaintiff's request for immediate medical attention and his examination eighteen hours later. Compl. ¶ 6; Dkt. No. 44-10 at 7; see Allen, 880 F. Supp. 2d at 410 (holding that, even where the plaintiff had sustained an injury later determined to be a second-degree burn, there was no evidence establishing that the defendant corrections officer knew of, and disregarded, the severity of the plaintiff's injuries, when the plaintiff was seen by medical staff the following morning).

Additionally, there is no evidence to support plaintiff's allegations of the severity of his symptoms. See Dkt. No. 44-10 at 7; Dkt. No. 46 ¶¶ 11-13. Even though plaintiff claims that he was in respiratory distress with "open like hives with pus and blood coming out," "blood and puss [sic] coming out of my ear," and that he could not see "because the infection had gotten to my eyes, my ears," at 2:00 A.M. on April 14, 2016, the medical staff notes demonstrate that at 6:15 P.M. that same day, plaintiff was in no apparent respiratory distress. Dkt. No. 44-9 at 40:3-7, 49:10-11; Dkt. No. 44-10 at 7; Dkt. No. 50 at 4. Further, there is no notation of the presence of pus, blood, or infection during that examination. Dkt. No. 44-10 at 7. There is also no evidence that plaintiff was experiencing these particular symptoms at the time he requested medical attention from defendant. Although defendant admits in his Statement of Material Facts that plaintiff told him that he could not breathe and he "had pus and blood coming out," Dkt. No. 44-3 ¶ 10, plaintiff's mere complaint to defendant does not demonstrate these conditions were actually present. The medical evidence only supports the presence of hives on plaintiff's forearms and neck. Dkt. No. 44-10 at 7. By his own admission, plaintiff was not vomiting, not experiencing convulsions, and did not lose

consciousness.  Dkt. No. 46 ¶¶ 11-13.  Plaintiff has presented nothing beyond his own self-serving statements to indicate that, at the time he spoke with defendant, plaintiff was experiencing anything other than a skin rash which was being monitored and treated by medical staff.  See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, . . . nonmoving parties . . .  may not rely on conclusory allegations or unsubstantiated speculation. . . . At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful.") (quotation marks and citation omitted); see also Cole v. Artuz, No. 93-CV-5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) ("Where a litigant is *pro se*, his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest. . . . Nevertheless, . . . a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.") (citation omitted).  Defendant demonstrates that, at plaintiff's medical examination eighteen hours later, plaintiff complained only of a rash on his arms, and medical staff noted hives on plaintiff's forearms and neck and no apparent respiratory distress.  Dkt. No. 44-3 ¶¶ 17-18.  Without medical evidence to support plaintiff's claims of more serious symptoms, plaintiff's self-serving assertions of respiratory distress, the presence of blood and pus, and an infection are insufficient to prove a "serious medical need."  Dkt. No. 44-9 at 40:3-7; Allen, 880 F. Supp. 2d at 409.  Thus, plaintiff has failed to prove that defendant's failure to take steps beyond leaving a note for the sergeant constituted a sufficiently serious deprivation of medical care under the objective prong.

## 2. Second Prong: Subjective Component

Even if plaintiff had demonstrated sufficiently serious deprivation, he fails to show that defendant acted with deliberate indifference to his medical needs. The subjective prong analyzes whether a defendant "knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. In other words,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

Id.

Plaintiff fails to demonstrate how defendant acted intentionally or recklessly failed to act with reasonable care when he declined to take plaintiff immediately to the medical department. As discussed above, despite plaintiff's complaints of "an intense and painful heat rash and hives" "with difficulty breathing, . . . and respiratory distress," Compl. ¶ 6, as well as "open wounds," "blood and pus coming out," and an infection in "my eyes, my ears," Dkt. No. 44-9 at 49:2-4, 10-11, there is no evidence that plaintiff was suffering from respiratory distress, an infection in his eyes and ears, or any blood or pus, let alone a significant amount. See Dkt. No. 44-10 at 7. Plaintiff alleges in his Complaint that, when he asked defendant to send him immediately to the medical department, defendant stated, "[t]he sargeant [sic] don't [sic] have time for your stuff!" Compl. ¶ 6. Yet in his deposition, plaintiff admits that, upon plaintiff's request for medical attention, defendant stated, "I'll write a note to the sergeant." Dkt. No. 44-9 at 43:22-25. In supplemental responses to defendant's Motion for Summary Judgment, plaintiff states defendant's response was, "I will write a note for him . . . ." Dkt. No. 50

21

at 2.  Plaintiff fails to present any evidence that respiratory distress, pus and blood, and an infection in eyes and ears, were visible to defendant, were as severe as plaintiff alleges, or were noted by medical staff at his examination eighteen hours after his verbal interaction with defendant.  Compare Dkt. No. 50 at 2-4 ("'everyone' one could see my conditions because it was visible to all who came by me") with Dkt. No. 44-10 at 7 ("Hives noted on forearms and neck.  No apparent respiratory distress").  There is nothing to indicate that defendant knew, or should have known, that plaintiff's skin condition posed an excessive risk to plaintiff's health.  See Darnell, 849 F.3d at 35. Although it is not disputed that plaintiff told defendant he could not breathe and had "pus and blood coming out," Dkt. No. 44-3 ¶¶ 9-10, the mere fact that plaintiff made this statement does not suffice to prove that these conditions actually existed.  Thus, as plaintiff fails to support his allegations of his medical condition with medical evidence or testimony demonstrating the presence of any symptoms other than "[h]ives on the forearms and neck," Dkt. No. 44-10 at 7, there is nothing to indicate that defendant acted intentionally or recklessly failed to act with reasonable care in response to plaintiff's skin rash when defendant acknowledged plaintiff's request for medical treatment and left a note for the sergeant.

Defendant's acknowledgement of plaintiff's request for immediate medical attention by writing a note to the sergeant does not equate to a "delay [in] access to medical care" or "complete denial of medical treatment."  Smith v. Outlaw, No. 15-CV-9961 (RA), 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (citation omitted); Dkt. No. 50 at 2-3.  Plaintiff has failed to prove "'intentional efforts on the part of prison officials to delay plaintiff's access to medical care at a time when he was in extreme

pain' and has made his medical problems known 'to the attendant prison personnel,' or 'complete denial of medical treatment.'"  Smith, 2017 WL 4417699, at *3 (citation omitted).

Therefore, plaintiff has failed to raise a material question of fact whether defendant knew of and disregarded an excessive risk to plaintiff's health or safety. Accordingly, plaintiff has not demonstrated that defendant was deliberately indifferent to a serious medical condition, and it is recommended that defendant's motion on this ground be granted.

### C.  Qualified Immunity

Defendant argues that he is entitled to qualified immunity because his leaving a note for the incoming sergeant, which resulted in plaintiff's being seen by medical staff the following day, "was in accord with the Constitution and plaintiff's rights."  See Dkt. No. 44-2 at 15; see also Cooper v. Orange Cty., No. 15-CV-10075 (VB), 2017 WL 3309754, at *5 (S.D.N.Y. Aug. 2, 2017) (holding that the plaintiff failed to satisfy the seriousness of deprivation requirement where the plaintiff, suffering from a rash and repeatedly treated by medical staff, alleged nothing more than an inadvertent failure to provide medical care, insufficient for a claim of constitutionally inadequate medical care).

Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and

citation omitted); <u>Eng v. Coughlin</u>, 858 F.2d 889, 895 (2d Cir. 1988).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  <u>See</u> <u>Aiken v. Nixon</u>, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has failed to establish a constitutional violation.  <u>See</u> subsection II.B. <u>supra</u>.  Thus, the undersigned need not reach whether the constitutional rights were clearly established at the time of the alleged violation.  <u>See</u> <u>Aiken</u>, 236 F. Supp. 2d at 230.

### III.   Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment (Dkt. No. 44) be **GRANTED**, and plaintiff's Complaint (Dkt. No. 1) be **DISMISSED in its entirety with prejudice**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health</u>

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[13]

Dated: December 7, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[13] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the R-R & O was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).